UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JACKLYN H.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:22-cv-02157-MG-JRS |
| | ) | |
| MARTIN O'MALLEY,[2] Commissioner of Social Security Administration, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

In January 2020, Plaintiff Jacklyn H. applied for Title XVI Supplemental Security Income ("SSI") from the Social Security Administration ("SSA"), alleging a disability onset date of May 9, 2014. [Filing No. 7-3 at 18.] Her application was initially denied on September 28, 2020, [Filing No. 7-3 at 2], and upon reconsideration on February 11, 2021, [Filing No. 7-2 at 37]. Administrative Law Judge Anne Sharrard (the "ALJ") conducted a hearing on September 22, 2021. [Filing No. 7-2 at 41.] The ALJ issued a decision on December 28, 2021, concluding that Jacklyn H. was not entitled to receive benefits. [Filing No. 7-2 at 17-34 .] After granting an extension of time, [Filing No. 7-2 at 12], the Appeals Council denied review on October 20, 2022. [Filing No.

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley should be substituted for Kilolo Kijakazi as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

7-2 at 2.] On November 8, 2022, Jacklyn H. filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g). [Filing No. 1.]

The parties consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. [Filing No. 9.] For the following reasons, the Court **REMANDS** the decision of the ALJ denying Jacklyn H. benefits.

# I.
## STANDARD OF REVIEW[3]

"The [SSA] provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, the Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Id.* For purposes of judicial review, "substantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers*

---

[3] The regulations governing disability determinations for benefits under Title II and Title XVI are identical in virtually all relevant respects unless otherwise noted.

*v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). The Court does "determine whether the ALJ built an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)). The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform His past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After step three, but before step four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at step four to determine whether the claimant can perform His own past relevant work and if not, at step five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v). The burden of proof is on the claimant for steps one through four; only at step five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). "An award of benefits is appropriate only where all factual issues have been resolved and the 'record can yield but one supportable conclusion.'" *Id.* (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

## II.
### BACKGROUND

Jacklyn H. was 45 years old on May 9, 2014—the date of her alleged onset of disability. [Filing No. 7-3 at 17.] Jacklyn H. does not have a high school diploma, but attended high school until she was 17 years old, and has a limited past work experience with her longest employment being a housekeeper at a nursing facility. [Filing No. 7-7 at 228.] Jacklyn H.'s application alleges that she can no longer work because of major depressive disorder, PTSD, borderline personality disorder, anxiety, chronic pain in neck, damaged nerves in neck, allergies, chronic sinusitis, asthma, hypertension, vertigo. [Filing No. 7-3 at 18.] Following the September 2021 hearing, the ALJ followed the five-step sequential evaluation set forth in 20 C.F.R. § 416.920(a)(4) and concluded that Jacklyn H. was not disabled. [Filing No. 7-2 at 17.] Specifically, the ALJ found as follows:

- At Step One, Jacklyn H. has not engaged in substantial gainful activity[4] since January 15, 2020 (the application date). [Filing No. 7-2 at 23.]

---

[4] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

- At Step Two, Jacklyn H. "has the following severe impairments: obesity, multilevel cervical spondylosis with cervical radiculopathy and C5-6 herniated disc status-post anterior cervical discectomy and fusion at C5-6, right-sided carpal tunnel syndrome, obstructive sleep apnea, major depressive disorder with psychotic features, generalized anxiety disorder, and post-traumatic stress disorder (PTSD)." [Filing No. 7-2 at 23.]

- At Step Three, Jacklyn H. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 7-2 at 24.] The ALJ specifically considered Listings 1.15 and 1.16 [Filing No. 7-2 at 24-25.] As to the "paragraph B" criteria for Listings 12.04 and 12.06, the ALJ found that Jacklyn H. had "moderate" Limitation in interacting with others and a mild limitation in understanding, remembering, or applying information. [Filing No. 7-2 at 25.]

- After Step Three but before Step Four, Jacklyn H. had the RFC "to perform light work as defined in 20 CFR 416.967(b) except she can lift and carry 20 pounds occasionally and 10 pounds frequently. She can sit six hours and stand and/or walk 6 hours. She can never crawl or climb ladders, ropes, or scaffolds, crawl. She can occasionally climb ramps and stairs. She can occasionally stoop, kneel, crouch, and balance on narrow, slippery, or erratically moving surfaces. She can occasionally reach overhead with the right upper extremity, which is the dominant upper extremity. She can frequently handle and finger with the bilateral upper extremities. She can frequently turn her head from side to side. She can have occasional exposure to temperature extremes and pulmonary irritants such as dust, gases, fumes, noxious odors, and poorly ventilated areas. She can have no exposure to hazards, including unprotected heights and exposed moving mechanical parts. She can understand and carry out simple and routine instructions in a low-stress job, which is defined as having occasional changes in the work setting and occasional decision making required. She can have occasional interaction with supervisors and co-workers with no team-based activities and occasional brief and superficial interaction with the general public but no face-to-face interaction. [Filing No. 7-2 at 26-27.]

- At Step Four, the ALJ found Jacklyn H. has no past relevant work. [Filing No. 7-2 at 32.]

- At Step Five, the ALJ, in considering Jacklyn H.'s age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy he can perform, including checker I, routing clerk, and router. [Filing No. 7-2 at 33.]

## III.
### DISCUSSION

Jacklyn H. brings four arguments on appeal: (1) the ALJ's decision was not supported by substantial evidence the ALJ failed to incorporate the RFC limitations related to social interaction; (2) the ALJ failed adequately incorporate limitations related to concentration, persistence, and pace into the RFC; (3) the ALJ reached an internally inconsistent persuasiveness evaluation of two medical opinions in violation of 20 C.F.R. §§ 404.1520c; and (4) at Steps 4 and 5, failing to build an accurate and logical bridge between the evidence and RFC. [Filing No. 11 at 8.]

**A.  Limitations in the RFC for Carpal Tunnel**

Jacklyn H. argues that the ALJ erred by formulating the RFC limitations (related to her carpal tunnel) by relying on her own subjective interpretations of raw medical data. [Filing No. 11 at 29.] She argues that the ALJ found her carpal tunnel to be a severe impairment, but the record does not contain medical opinions as to the functional limitations from her carpal tunnel. Instead of obtaining expert hearing testimony or a consultative examination to give a medical opinion as to her functional limitations, Plaintiff argues the ALJ arbitrarily imposed RFC limitations of "frequent handling and fingering" and "occasional overhead reaching." [Filing No. 11 at 30.]

In response, the Commissioner argues that the ALJ reasonably considered Plaintiff's carpal tunnel. He points out that the ALJ discussed Plaintiff's description of her pain and abnormal exam findings indicating diminished sensations and decreased strength. [Filing No. 13 at 25.] The Commissioner argues that the state agency physicians, Drs. Corcoran and Hasanadka, reviewed Plaintiff's medical records and found no manipulative limitations. Because the ALJ gave Plaintiff greater limitations than the state agency consultants, he argues the ALJ's RFC limitations as to the carpal tunnel were not in error. [Filing No. 13 at 26.] The Commissioner notes that Dr. Corcoran specifically considered Plaintiff's carpal tunnel and her EMG testing results (as well as her subjective symptoms). [Filing No. 13 at 27.] Finally, the Commissioner argues that the ALJ never

6

interpreted the EMG findings because she instead relied upon the state agency's determination that Plaintiff didn't need any manipulative limitations. [Filing No. 13 at 27.] Because the ALJ relied on Dr. Corocan's medical opinion finding no manipulative limitations, and even gave the Plaintiff more limitations than Dr. Corocan found, the Commissioner says there was no clear error. [Filing No. 13 at 27-28].

In reply, the Plaintiff argues that the ALJ did not adopt Dr. Corcoran's findings as to her carpal tunnel manipulative limitations, therefore the Commissioner's argument that the ALJ adopted Dr. Corcoran's interpretation of the EMG testing unavailing. [Filing No. 14 at 7.]

The Commissioner's argument is contradictory. He argues there is no clear error because the ALJ relied on Dr. Corocan's medical opinion, but also argues that the ALJ gave Plaintiff greater manipulative limitations than Dr. Corocan found (no manipulative limitations). Here is the problem. The ALJ found that Plaintiff's carpal tunnel was severe. The ALJ found that Dr. Corocan's opinion was mostly persuasive, however "the claimant is more limited than opined here." [Filing No. 7-2 at 30?] The ALJ next notes Plaintiff's history of EMG/NCS testing that showing medical neuropathy, right carpal tunnel release surgery, and electric shocks throughout her hands and provider notes of diminished sensation in her hands. [Filing No. 7-2 at 30.]

Because the ALJ found some RFC restriction in manipulative handling, where the state agency doctors called for none, it is tempting to find the ALJ's unexplained conclusion harmless error. However, the Court finds that the ALJ failed to build a logical bridge between the record evidence of Plaintiff's severe carpal tunnel and his conclusion that Plaintiff can handle "frequent handling and fingering."[5] In fact, the ALJ mentions the EMG records after finding the Plaintiff is

---

[5] The Court does not believe the record evidence supports a conclusion that Plaintiff cannot handle occasional overhead reaching, so does not include this RFC finding in its clear error analysis.

more limited than the state agency doctors found. [Filing No. 7-2 at 30 ("[T]he claimant is more limited than opined here . . . [a]dditionally, EMG/NCS testing showed median neuropathy, and she has a history of right carpal tunnel release surgery. She described feeling electric shocks in her entire hand, and providers noted diminished sensation in her bilateral hands.").] The ALJ gives significance to the EMG study, which significance is not given by Dr. Corcoran, who found no manipulative limitations. It is not clear how the ALJ arrived at its conclusion that, despite carpal tunnel characterized as severe under the regulations, Plaintiff could engage in frequent fingering and handling for 2/3 of the workday. The ALJ may have attempted to interpret the EMG data showing median neuropathy, or she may not have. Her treatment of the EMG data and its significance is unclear. Her construction of this portion of the RFC appears arbitrary; without a logical bridge, it cannot stand.

The ALJ must "articulate in a rational manner the reasons for [her] assessment of a claimant's residual functional capacity," *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009), in a way that builds "an accurate and logical bridge from the evidence to the conclusion," *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007). *See also Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005) (holding that an ALJ's failure to explain how he or she arrived at RFC conclusions warrants reversal).

Therefore, this issue is remanded, and the ALJ is encouraged to support any functional limitation for frequent handling and fingering with the opinion of a consultive examiner under 20 C.F.R. § 404.1519a(b)(3)-(4).

### B. Additional Issues

The Court need not resolve other issues raised by Jacklyn H. regarding the RFC adopted by the ALJ because the above issue is dispositive. However, it will briefly touch on Plaintiff's

arguments regarding concentration, persistence, and pace ("CPP"), because there is dovetail with a Step Three analysis that precedes the Step Four remand.

Plaintiff has concerns with the ALJ's finding of the state agency opinions as partially persuasive (who opined moderate limitations in CPP), along with the ultimate construction of the RFC regarding CPP. [Filing No. 11 at 17-20.] While finding Plaintiff was only mildly limited in Paragraph B criteria for CPP, the ALJ adopted various CPP limitations in the RFC. [Filing No. 7-2 at 25-28.] Because the ALJ provided for CPP limitations equal to those she found partially persuasive from the record evidence, any error at Step Three is harmless, and claimant's arguments are unavailing. [*See* Filing No. 7-2 at 26-27 (finding mild limitations in CPP but providing for limitations attested to by the state agency consultants in their narrative to accommodate moderate limitations).]. Moreover, the ALJ's CPP analysis under both Steps Three and Four was exceedingly thorough.

### IV.
### CONCLUSION

For the reasons detailed above, the Court **REMANDS** the ALJ's decision denying Jacklyn H. benefits. Final judgment will issue by separate entry.

Date: 3/27/2024

                                                 Mario Garcia
                                                 United States Magistrate Judge
                                                 Southern District of Indiana

Distribution:
To ECF  Counsel of Record